11-1035-cr(L)
*United States v. Anderson (Grimes)*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 28th day of April, two thousand seventeen.

Present:  ROBERT A. KATZMANN,
                      *Chief Judge*,
              DENNIS JACOBS,
              DEBRA ANN LIVINGSTON,
                      *Circuit Judges*.

---

UNITED STATES OF AMERICA,

                      *Appellee*,

                      v.                                                                No. 11-1035-cr(L)
                                                                                          No. 13-3224-cr(con)

DAVID ANDERSON, a/k/a Day Day, JEFFREY ANDERSON, JULIET ANDERSON, KEVIN LOUIS ANDERSON, a/k/a Glasses, MARLON ANDERSON, a/k/a Cash, KEITH BENJAMIN, a/k/a KB, DANIEL BRIGGS, a/k/a Tre Pound, SHANDRELL DAWSON, DEREK GREEN, a/k/a "D", MADELINE SANCHEZ, HOWARD TAYLOR, a/k/a Jay,

                      *Defendants*,

WILLIE GRIMES, a/k/a Chill, KEVIN LAMONT ANDERSON, a/k/a Cuda,

                      *Defendants-Appellants*.

---

For Defendant-Appellant
Willie Grimes:

MATTHEW D. NAFUS, Law Office of Matthew D. Nafus, Esq.,
Scottsville, NY.

For Defendant-Appellant
Kevin Lamont Anderson:

LAWRENCE D. GERZOG, Law Offices of Lawrence D. Gerzog,
New York, NY.

For Appellee:

FRANK T. PIMENTEL, Assistant United States Attorney, *for*
James P. Kennedy, Jr., Acting United States Attorney for the
Western District of New York, Buffalo, NY.

Appeal from the United States District Court for the Western District of New York (Siragusa, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants Willie Grimes and Kevin Lamont Anderson appeal from judgments of conviction and sentence entered against them by the United States District Court for the Western District of New York (Siragusa, *J.*). On October 26, 2009, a jury convicted Grimes of conspiracy to distribute, and to possess with intent to distribute, 50 grams or more of cocaine base and between 500 grams and less than 5 kilograms of cocaine, in violation of 21 U.S.C. § 846. The jury convicted Anderson of conspiracy to distribute, and to possess with intent to distribute, 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. It also convicted Anderson of renting, using, and maintaining premises for the purpose of manufacturing and distributing cocaine base, in violation of 21 U.S.C. § 856(a), and of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). Finally, the jury found by special verdict that Anderson's assets were subject to forfeiture in the amount of $1 million. Grimes was sentenced principally to 168 months' imprisonment and Anderson was sentenced principally to

2

life imprisonment.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Both defendants contend on appeal that the district court erred in denying their motion for a new trial alleging juror misconduct without holding an evidentiary hearing. We review a district court's denial of a motion brought pursuant to Federal Rule of Criminal Procedure 33 for abuse of discretion, *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009), as we do "a trial judge's handling of juror misconduct," *United States v. Abrams*, 137 F.3d 704, 708 (2d Cir. 1998) (per curiam). The defendants' argument is based on a juror's post-verdict assertions that two other jurors were using the internet during trial and deliberations to learn information that was not properly before the jury. In particular, the juror avers that one juror learned that Anderson's grandmother (Juliet Anderson, a co-defendant) was going to testify on Anderson's behalf and that another juror somehow knew Juliet Anderson's income. As the district court observed, the first allegation lacked credibility because no public report could be located suggesting that the defense was going to call Juliet Anderson, and the second allegation was based on the mistaken premise that no information regarding Juliet Anderson's income was in evidence. Thus, we find no abuse of discretion.

Grimes makes two arguments specific to his appeal: first, that the evidence was insufficient to support the jury's finding that he willfully participated in the charged conspiracy, and second, that the district court erred in assigning criminal history points for a 2001 misdemeanor conviction. Beginning with the first argument, "[w]e review a claim of insufficient evidence de *novo*, but must uphold the jury verdict if drawing all inferences in favor of the prosecution and viewing the evidence in the light most favorable to the prosecution, *any* rational

---

[1] The district court subsequently granted Grimes's motion for a sentence reduction based on a retroactive amendment to the Sentencing Guidelines. Grimes is now serving a 135-month term.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (internal quotation marks and citation omitted). That standard is easily met here, as various witnesses testified to Grimes's involvement with Anderson and his crack cocaine distribution activities. For example, one government witness testified that Grimes "work[ed]" for Kevin Lamont Anderson, the orchestrator of the conspiracy, "[p]ick[ing] up money and drop[ping] off drugs." Joint App. 377–78.

Grimes's argument regarding his criminal history score turns on whether the district court clearly erred in determining that the conduct underlying his 2001 misdemeanor conviction for attempted criminal possession of marijuana in the fourth degree was not "relevant conduct" to the instant offense within the meaning of § 1B1.3 of the United States Sentencing Guidelines. *See United States v. LaBarbara*, 129 F.3d 81, 86 (2d Cir. 1997) ("Appellate review of a district court's determination of whether particular acts are relevant conduct for purposes of Section 1B1.3 employs clear-error analysis."); U.S.S.G. § 4A1.2 cmt. n.1. The district court reasoned that the 2001 offense was not "relevant conduct" to the instant offense because it involved marijuana rather than cocaine and involved possession rather than distribution. Though Grimes asserts that his 2001 offense was relevant conduct to his instant conviction because it involved the distribution of illegal drugs, we are not persuaded. We find no clear error in the district court's determination.

Turning to Anderson's arguments, Anderson first submits that the district court abused its discretion in denying a series of Rule 33 motions he filed contending that his trial was tainted by perjury on the part of cooperating witnesses. In exercising the "broad discretion" conferred by Rule 33, a district court may "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992)

4

(internal quotation marks omitted). Here, the district court carefully analyzed the specific instances of alleged perjury identified in Anderson's Rule 33 motion and concluded that the defendant had failed to establish perjury in each instance. Finding no error in these determinations, we find no abuse of discretion in the district court's denial of the Rule 33 motion. *See United States v. Diaz*, 176 F.3d 52, 106 (2d Cir. 1999) (providing for clear error review of district court findings of fact in the context of Rule 33 motions).

Moreover, even assuming *arguendo* that some of the possible inconsistencies Anderson now highlights for the first time on appeal amount to perjury, and assuming that these are properly before us, Anderson's challenge fails because he makes no persuasive showing "that the jury probably would have acquitted in the absence of the false testimony." *Sanchez*, 969 F.2d at 1414. That stray pieces of testimony over the course of a six-week trial may have been false does not show how Anderson would likely have been acquitted in the absence of such testimony. Nor has Anderson made any nonconclusory showing that the government should have known that its witnesses were committing perjury, such that Anderson would need only to demonstrate that the jury might have acquitted in order to be entitled to a new trial. *See id.* ("It is only in the rare instance where it can be shown that the prosecution knowingly used false testimony that we would apply a less stringent test and permit the granting of [a] new trial where the jury 'might' have acquitted absent the perjury.").

Anderson also contends that, because of the supposed pervasive unreliability of the testimony, the evidence was legally insufficient to support his conviction and that the conviction was entered in violation of his Fifth Amendment right to due process. As for the challenge to the sufficiency of the evidence, "resolv[ing] all inferences from the evidence and issues of credibility in favor of the verdict," we conclude that "a rational trier of fact could . . . have found the

essential elements of the crime beyond a reasonable doubt." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000) (internal quotation marks omitted); *see also United States v. Triumph Capital Grp.*, 544 F.3d 149, 158–59 (2d Cir. 2008) ("In order to avoid usurping the role of the jury, courts must defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony when reviewing the sufficiency of the evidence." (internal quotation marks and citations omitted)). Anderson's vaguely sketched constitutional argument fails for substantially the same reasons that Anderson's challenge to the denial of his Rule 33 motions fails.

Anderson next argues that his sentence is procedurally unreasonable because the district court erred in applying the "murder cross-reference" found in § 2D1.1(d)(1) of the Sentencing Guidelines. The application of the cross-reference was based on the district court's finding that Anderson preemptively murdered two individuals that he believed intended to rob him in order to protect his drug trafficking activity. "This Court reviews a district court's application of the Guidelines *de novo*, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). "A district court commits procedural error where it . . . makes a mistake in its Guidelines calculation . . . ." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). Section 2D1.1 of the Guidelines, which covers drug trafficking offenses, provides that if a victim was murdered, the sentencing court should apply the applicable murder Guideline in calculating the defendant's Guidelines range (assuming the resulting offense level is greater). U.S.S.G. § 2D1.1(d)(1). The murder cross-reference applies only if the "murder is relevant to [the defendant's] offense of conviction under guideline § 1B1.3." *United States v. Taylor*, 813 F.3d 1139, 1150 (8th Cir. 2016). Here, it is undisputed that the district court invoked the wrong

6

paragraph of § 1B1.3 in finding the cross-reference applicable. In particular, the district court stated prior to announcing its finding that "[w]hat must be shown is that the murders were part of a common plan or scheme as the offense charged in the indictment," paraphrasing the language of § 1B1.3(a)(2). Gov't App. 249. That provision, by its terms, only applies where the relevant conduct constitutes an offense that the Guidelines would require to be grouped—a circumstance that does not obtain here. *See* U.S.S.G. § 1B1.3(a)(2).

Contrary to Anderson's contention, however, a different standard for relevant conduct could apply. *See* U.S.S.G. § 1B1.3(a)(1)(A) (classifying as relevant conduct "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction [or] in preparation for that offense"). Though facially expansive, this Court has explained that "[t]o qualify as 'relevant conduct' [under § 1B1.3(a)(1)], the conduct must occur *in the course* of commission of the offense of conviction." *United States v. Wernick*, 691 F.3d 108, 115 (2d Cir. 2012) (emphasis added). We need not determine whether § 1B1.3(a)(1)(A) would apply here, however, because even assuming *arguendo* that it did not, the error would be harmless because Anderson's offense level and Guidelines range would remain unchanged. *Cramer*, 777 F.3d at 603 ("An error in Guidelines calculation is harmless if correcting the error would result in no change to the Guidelines offense level and sentencing range."). Anderson's total offense level with the application of the murder cross-reference exceeded 43, but was treated as 43 pursuant to the Guidelines. *See* U.S.S.G. Ch. 5, Pt. A, cmt. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43."). In the absence of the cross-reference, Anderson's base offense level would have been 38 in light of the quantity of cocaine base involved in the offense. His total offense level would have been 46, however, in light of a four-level enhancement for leadership role, a two-level enhancement for possession of

a firearm, and a two-level enhancement for obstruction of justice—all of which the district court found applicable. Thus, even without the murder cross-reference, Anderson's offense level would still be treated as 43, and his Guidelines range would remain life imprisonment.

Anderson argues that a retroactive amendment to U.S.S.G § 2D1.1 has increased the threshold drug quantity needed to support a base offense level of 38 from 8.4 kilograms of cocaine base to 25.2 kilograms, such that we should remand for the district court to reconsider the Guidelines calculation in light of the amendment. This is unnecessary for two reasons. First, in finding that Anderson's offense involved "well beyond" 8.4 kilograms of cocaine base, the district court credited a witness's testimony that Anderson and his accomplices were distributing about 2 kilograms of cocaine base per week in the late 1990s. Gov't App. 312–13. The district court thus effectively found that the offense involved far more than 25.2 kilograms of cocaine base. Second, even assuming a lower base offense level of 36 (the base offense level now associated with at least 8.4 but less than 25.2 kilograms of cocaine base, *see* U.S.S.G. § 2D1.1(c)(2)), Anderson's offense level would still exceed 43 with the aforementioned enhancements. Accordingly, any error in applying the murder cross-reference remains harmless.

We likewise reject Anderson's argument that the alleged perjury at trial and during the sentencing proceedings renders his sentence procedurally and substantively unreasonable. The district court explicitly found at sentencing that Keith Benjamin, whose testimony supported the district court's Guidelines calculation, was credible. That finding was not clearly erroneous. Anderson also suggests that his sentence was substantively unreasonable because the district court credited testimonial evidence during the sentencing proceedings without giving Anderson an opportunity to confront relevant witnesses. However, to the extent Anderson is arguing that his rights were violated in this manner, "[b]oth the Supreme Court and this Court . . . have

8

consistently held that the right of confrontation does not apply to the sentencing context." *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005).

Finally, Anderson argues that the jury's forfeiture verdict should be vacated. We review a district court's legal conclusions regarding forfeiture *de novo* and its factual conclusions for clear error. *United States v. Sabhnani*, 599 F.3d 215, 261 (2d Cir. 2010). Anderson argues that the special verdict form submitted to the jury was invalid in two respects. First, he argues that the form did not comply with Federal Rule of Criminal Procedure 32.2(b)(5)(B) because it did not "ask[] the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." Fed. R. Crim. Proc. 32.2(b)(5)(B). Second, he contends that it was error for the jury to determine the amount of money subject to forfeiture because Rule 32.2 vests that responsibility with the court.

As a threshold matter, the government's position that these arguments are waived is wrong. While Anderson's counsel did not object to the composition of the special verdict form or the submission of the quantum issue to the jury, his silence does not amount to the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Rather, where a party does not contemporaneously object to a claimed error, we examine it on appeal for plain error. *See Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005). "To establish plain error, the defendant must establish (1) error (2) that is plain and (3) affects substantial rights." *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007). "If the error meets these initial requirements, we then must consider whether to exercise our discretion to correct it, which is appropriate only if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted).

9

Neither of Anderson's arguments regarding the special verdict satisfies the plain error standard. With respect to Anderson's first argument regarding the omitted verbiage, the district court instructed the jury on what was required to find forfeiture, and Anderson does not contend the court's instructions were deficient in any respect. As such, Anderson cannot show that the claimed error affected substantial rights. *See Olano*, 507 U.S. at 734 (noting that to "affect substantial rights," the claimed error generally "must have affected the outcome of the district court proceedings" (alteration omitted)). With respect to Anderson's second argument regarding the jury's finding as to the amount of forfeiture, nothing in Rule 32.2 *precludes* the court from putting the question to the jury. Thus, the claimed error cannot be deemed "clear or obvious" (such that it was plain), and Anderson has again made no showing that the claimed error affected substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Anderson also contends that the district court erred in permitting the government's efforts to attach assets of which he was the beneficial owner, specifically, his mother's life insurance policy and retirement plan account. But we have clearly held that a money judgment entered under the criminal forfeiture statute at the time of sentencing "is effectively an *in personam* judgment in the amount of the forfeiture order." *United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (per curiam) (internal quotation mark omitted). There was therefore no error in the district court's decision to permit the government to pursue these assets.

We have considered all of the defendants' arguments on this appeal and find in them no basis for reversal. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

10